837 P.2d 210 (1992)
The STATE of Colorado, for the Use of the DEPARTMENT OF CORRECTIONS, Petitioner-Appellant and Cross-Appellee,
v.
Federico PENA, Mayor of City and County of Denver; J.D. MacFarlane, Manager of Safety, City and County of Denver; John Simonet, Director of Corrections for the City and County of Denver; Mose Trujillo, Warden of the Jail for the City and County of Denver; Sal Carpio, Robert Crider, Kathy Donohue, Stephanie Foote, Ted Hackworth, Nieves McIntyre, Cathy Reynolds, William Roberts, William Scheitler, John Silchia and Paul Swalm, City Council Members, City and County of Denver, Respondents-Appellees and Cross-Appellants.
No. 87CA1715.
Colorado Court of Appeals, Div. II.
January 30, 1992.
Rehearing Denied March 26, 1992.
Certiorari Granted August 10, 1992.
*211 Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul S. Sanzo, Asst. Atty. Gen., Denver, for petitioner-appellant and cross-appellee.
Stephen H. Kaplan, City Atty., Stan M. Sharoff, Asst. City Atty., Denver, for respondents-appellees and cross-appellants.
Opinion by Judge MARQUEZ.
The State of Colorado Department of Corrections (Department) appeals from a judgment of the district court in favor of the mayor and other officials of the City and County of Denver (Denver) ruling that the Department owes Denver $835,136 for the care and housing of state-sentenced prisoners and that the Denver County Jail is under no obligation to accept parole violators tendered to it for safekeeping. Denver cross-appeals that portion of the judgment denying its quantum meruit counterclaim for the value of the care and housing in excess of $835,136. We affirm.
*212 Because of congestion at the county jail and the Department's failure to pay Denver to house backlogged state prisoners, Denver, in March 1986, adopted a policy of refusing to accept any parole violator who was charged with merely "technical" parole violations, that is, violations that did not involve commission of a new criminal offense.
Thereafter, state parole officers arrested an individual and transported him to the Denver Prearraignment Detention Facility which refused to accept the arrestee because of this departmental policy.
As a result, the Department of Corrections, pursuant to C.R.C.P. 106, filed a petition for relief in the nature of mandamus and a motion for a temporary restraining order and preliminary injunction, asking the district court to order officials in charge of the Denver County Jail to accept any parole violator tendered to them for safekeeping. Denver counterclaimed, based on a quantum meruit theory, for the value of Denver's care and housing of prisoners sentenced and awaiting transportation to the Department of Corrections or, in the alternative, for $16 per day pursuant to § 17-1-112, C.R.S. (1986 Repl.Vol. 8A) for each state-sentenced prisoner.
Denver subsequently filed an amended counterclaim seeking an order to remove immediately all state prisoners from the Denver County Jail and to enjoin future backlogging of prisoners awaiting transportation to the Department's facilities.
In September 1987, following a bench trial, the district court noted certain testimony that "the Denver County Jail ... which is presently rated at a population of 650, being built for a population of 750, thirty years ago, had at the time of trial 1,240 odd inmates," and that approximately 160 of those prisoners were state prisoners. It then ordered the Department to remove its prisoners from the Denver County Jail and enjoined future backlogging. These rulings are not being appealed.
Additionally, the court ruled that Denver is not obligated to accept technical parole violators tendered to it for safekeeping pending a revocation hearing, and it further held that the Department owes Denver $835,136 pursuant to § 17-1-112 for the care and housing of state prisoners. The court denied Denver's quantum meruit counterclaim.

I.
The Department now argues that the court erred in ruling that the Department owes Denver $835,136 as reimbursement for the costs of safekeeping state prisoners. We disagree.
The relevant statute, § 17-1-112(1), C.R.S. (1986 Repl.Vol. 8A), provided:

Subject to appropriations, the department shall reimburse any county or city and county, in an amount of sixteen dollars per day to maintain a prisoner in a jail of the county or city and county, for the expenses incurred by that county or city and county in the confinement and maintenance of any person who is sentenced to a term of imprisonment in a correctional facility and who is confined in a local jail. Such reimbursement shall be for each day following seventy-two hours after such sentence but prior to the transmittal of the qualified person to a correctional facility. (emphasis added)
This statute has subsequently been amended. See § 17-1-112, C.R.S. (1991 Cum. Supp.) (establishing increased amounts payable, but still making payment subject to appropriations).
The thrust of the Department's argument is that since state money can be expended only through appropriation by the General Assembly, and the right to be reimbursed under § 17-1-112 is expressly subject to appropriations, if sufficient appropriations to fulfill all obligations under the statute are not available, a court cannot order relief. Accordingly, since the Department asserts that appropriated funds were not available to pay Denver's claims, it contends that the judgment cannot stand. This argument, however, concerns collection of the judgment, rather than merely its imposition.
The General Assembly has mandated that the department "shall reimburse" *213 counties for the expenses incurred in the confinement and maintenance of persons sentenced to a term of imprisonment to a correctional facility. Section 17-1-112(1). The Department on appeal acknowledges that § 17-1-112 "was an effort by the General Assembly to help defray the counties' costs of housing state prisoners awaiting transportation to a correctional facility."
Here, the trial court found, with record support, that the cost of housing an inmate at the Denver County Jail was $49 per day, but correctly concluded that the Department's liability was limited to $16 per day, the statutorily mandated portion of those costs. The Department's liability is not dependent upon the availability of funds, and thus, Denver's entitlement to judgment is not affected by lack of sufficient appropriations. See Goebel v. Colorado Department of Institutions, 764 P.2d 785 (Colo. 1988).
Therefore, the court did not err in entering a judgment in favor of Denver.

II.
The Department next contends that the district court erred in ruling that the Denver County Jail was not obligated to receive and keep "technical" parole violators pending revocation hearings. We disagree.
Section 17-2-103(4)(a), C.R.S. (1986 Repl. Vol. 8A), in effect at the time at issue, provides that if a parolee is arrested "the parolee shall be held in a county jail pending action by the parole officer...." (emphasis added)
An earlier version of this statute, C.R.S. 1963, § 39-17-4, provided that the officer: "shall have the right to arrest such suspected violator with or without a warrant and to hold him in the nearest county jail." (emphasis added) Thus, the statute has been amended to allow a parole officer to hold a parolee in any county jail as opposed to the nearest one available.
The general rule is that when a statute is amended it is presumed that the General Assembly intended to change the law. Charnes v. Lobato, 743 P.2d 27 (Colo.1987). Thus, we agree with the trial court that the intent of the General Assembly was to give the Department greater flexibility in deciding where to house parole violators. However, since the statute does not expressly require the county to accept such parole violators, and because the evidence of overcrowding at the Denver County Jail was undisputed, we also agree with the trial court that the Denver County Jail had no obligation to accept technical parole violators.

III.
Denver contends that the court erred in denying its quantum meruit claim. We disagree.
Common law principles must yield to state statutes governing the same subject. Shoemaker v. Mountain States Telephone & Telegraph Co., 38 Colo.App. 321, 559 P.2d 721 (1976). Thus, the court did not err in ruling that § 17-1-112 controlled and in denying the claim.
Denver also argues that § 17-1-112 is unconstitutional. However, we have no jurisdiction to determine the constitutionality of statutes. Kollodge v. Charnes, 741 P.2d 1260 (Colo.App.1987); § 13-4-102(1)(b), C.R.S. (1987 Repl.Vol. 6A).
To the extent that we have jurisdiction of the issues raised, the money judgment in the amount of $835,136, as well as the portions of the judgment with respect to technical parol violators and the quantum meruit counterclaim are affirmed.
SMITH and METZGER, JJ., concur.